UNITED STATES DEPARTMENT OF JUSTICE
OFFICE OF THE UNITED STATES TRUSTEE
ANDREW R. VARA
UNITED STATES TRUSTEE, REGIONS 3 & 9
Jeffrey M. Sponder, Esq.
Lauren Bielskie, Esq.
One Newark Center, Suite 2100
Newark, NJ 07102
Telephone: (973) 645-3014
Email: jeffrey.m.sponder@usdoj.gov
        lauren.bielskie@usdoj.gov

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| | : | Chapter 11 |
| In re: | : | |
| | : | Case No. 24-18921 (MBK) |
| Presperse Corporation,[1] | : | |
| | : | The Honorable Michael B. Kaplan, Chief Judge |
| Debtor. | : | |
| | : | Hearing Date: January 27, 2025 at 9:30 a.m. |
| | : | |

**UNITED STATES TRUSTEE'S LIMITED OBJECTION TO DEBTOR'S MOTION FOR
INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTOR TO CONTINUE
AND MAINTAIN ITS EXISTING CASH MANAGEMENT SYSTEM, BANK
ACCOUNTS AND BUSINESS FORMS, (II) MODIFYING THE INVESTMENT
GUIDELINES AND (III) GRANTING RELATED RELIEF**

Andrew R. Vara, the United States Trustee for Regions Three and Nine ("U.S. Trustee"),

through his undersigned counsel, files this limited objection ("Limited Objection") to the Debtor's

*Motion for Interim and Final Orders (i) Authorizing the Debtor to Continue and Maintain Its*

*Existing Cash Management System, Bank Accounts and Business Forms, (ii) Modifying the*

*Investment Guidelines and (iii) Granting Related Relief* (the "Motion") (Dkt. 8), and respectfully

---

[1] The Debtor in this chapter 11 case, along with the last four digits of each Debtor's federal tax identification number is Presperse Corporation (7527). The mailing address for the Debtor for purposes of this chapter 11 case is 19 Schoolhouse Rd. Somerset, New Jersey 08873.

states as follows:

## **PRELIMINARY STATEMENT**

1.      The U.S. Trustee objects to the Debtor's Motion to the extent that it seeks to waive the requirements of 11 U.S.C. §345(b) with regard to the Foreign Currency Accounts.[2]  Through the Motion, the Debtor seeks a waiver of the requirements of section 345(b) with regard to Foreign Currency Accounts, and with that, the Debtor essentially seeks to allow all funds in the Foreign Currency Accounts to remain in the bankruptcy estate as they were managed pre-bankruptcy.  The Foreign Currency Accounts remain assets of the bankruptcy estate being administered here.

2.      Section 345(b) is necessary to protect estate property, and to provide the appropriate oversight of the Debtor's post-petition financial transactions as contemplated and required by the chapter 11 process.

3.      To ensure that trustees and debtors in possession meet their responsibilities to safeguard funds in accordance with section 345, the U.S. Trustee monitors fiduciaries and depositories, and requires that chapter 11 estate assets be held in debtor-in-possession accounts at "authorized depositories," *i.e.*, those that have entered into a Uniform Depository Agreement ("UDA") with the U.S. Trustee.  *See* United States Trustee Program Policy and Practices Manual, Volume 7, "Banking and Bonding," ("Manual"), §§ 7-1.1 – 7-1.2.[3]

4.      The UDA between a depository and the U.S. Trustee requires the depository to maintain collateral, unless an order of the bankruptcy court provides otherwise, in an amount of no less than 115 percent of the aggregate bankruptcy funds on deposit in each bankruptcy estate that exceeds the FDIC insurance limit.  *See* Manual, § 7- 1.2.1.  Pursuant to the UDA, each

---

[2] Capitalized terms in this Objection shall have the meaning set forth in the Motion.

[3] Available at https://www.justice.gov/ust/united-states-trustee-program-policy-and-practices-manual

authorized depository is required to provide quarterly reports for all bankruptcy estate accounts on deposit at all branches of the depository within the district.  *See* Manual, § 7- 1.3.2.

5.       Pursuant to the U.S. Trustee's responsibilities under 11 U.S.C. § 345 and 28 U.S.C. § 586, the U.S. Trustee has entered into UDAs with multiple financial institutions.  The UDA requires the signatory bank to collateralize or obtain a surety bond for all estate monies exceeding FDIC insurance limits, pursuant to section 345(b) of the Bankruptcy Code.  The UDA also requires banks to provide the U.S. Trustee with reports of all accounts that a debtor maintains at the bank on a quarterly basis.  Further, the UDA makes all estate monies on deposit immediately due and payable if the depository bank fails, suspends active operations or becomes insolvent, or if a receiver, conservator or liquidator is appointed for the bank.

6.       In the Declaration of Mehul Shah, Chief Financial Officer of the Debtor in Further Support of Debtor's Motion for Interim and Final Orders (i) Authorizing the Debtor to Continue and Maintain Its Existing Cash Management System, Bank Accounts and Business Forms, (ii) Modifying the Investment Guidelines and (iii) Granting Related Relief (the "Declaration"), the Debtor admits that the Foreign Currency Accounts are not FDIC insured nor insured in any way. *See* Dkt. 252 at page 2 of 4.   As such, the funds held in the Foreign Currency Accounts are not bonded, insured, or otherwise protected for the benefit of the bankruptcy estate, and thus stand subject to a risk of loss.[4]

7.       Accordingly, the U.S. Trustee respectfully submits that the Motion does not meet the threshold of cause to waive the requirements of section 345.  Requiring the Debtor's compliance with section 345(b) is necessary to protect estate property, and further to provide the appropriate oversight of the Debtor's post-petition financial transactions as contemplated and

---

[4] Debtor advises that it will not allow the Foreign Currency Accounts to exceed $750,000 at any one time.  *See* Dkt. 252 at page 3 of 4.

required by the chapter 11 process.  Under the facts and circumstances as presented, the Debtor's

request to waive the requirements of section 345(b) should be denied.

## JURISDICTION

8.      The Court has jurisdiction to hear this Motion.

9.      The U.S. Trustee is charged with overseeing the administration of chapter 11 cases

filed in this judicial district, pursuant to 28 U.S.C. § 586. This duty is part of the U.S. Trustee's

overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted

by the courts to guard against abuse and over-reaching to assure fairness in the process and

adherence to the provisions of the Bankruptcy Code. *See In re United Artists Theatre Co.*, 315

F.3d 217, 225 (3d Cir. 2003) ("U.S. Trustees are officers of the Department of Justice who protect

the public interest by aiding bankruptcy judges in monitoring certain aspects of bankruptcy

proceedings."); *United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*,

33 F.3d 294, 298 (3d Cir. 1994) ("It is precisely because the statute gives the U.S. Trustee duties

to protect the public interest . . . that the Trustee has standing to attempt to prevent circumvention

of that responsibility."); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498,

499 (6th Cir. 1990) ("As Congress has stated, the U.S. trustees are responsible for protecting the

public interest and ensuring that the bankruptcy cases are conducted according to [the] law").

Moreover, 11 U.S.C. § 345 sets forth a statutory role for the U.S. Trustee in ensuring compliance

with obligations imposed on the Debtor to protect funds of the estate.

10.      Under section 307 of title 11 of the United States Code (the "Bankruptcy Code" or

"Code"), the U.S. Trustee has standing to be heard on the Debtor's request for approval of the

relief in the Motion.

**BACKGROUND**

11.  On September 9, 2024 ("Petition Date"), Presperse Corporation (the "Debtor") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.  See* Dkt. 1.

12.  The Debtor continues to operate its business as a debtor in possession pursuant to 11 U.S.C. §§ 1107 and 1108.

13.  No trustee or examiner has been appointed in this chapter 11 case.

14.  On September 26, 2024, the Office of the United States Trustee filed a Notice of Appointment of Official Committee of Unsecured Creditors (the "Committee").  *See* Dkt. 73.

***The Motion and Interim Orders:***

15.  On September 9, 2024, the Debtor filed the Motion.  *See* Dkt. 8.  As stated in the Motion, the Debtor uses the Foreign Currency Accounts, which consist of the GBP Account, the Euro Account, and the Yen Account.  *See id.* at page 8 of 22.  At the time the Motion was filed, the Debtor had $164,751.92 in the GBP Account, $736,085.66 in the Euro Account and $378,538.66 in the Yen Account.  *See id.*

16.  On September 13, 2024, the Court entered an Interim Order (i) Authorizing the Debtor to Continue and Maintain Its Existing Cash Management System, Bank Accounts and Business Forms, (ii) Modifying the Investment Guidelines and (iii) Granting Related Relief (the "First Interim Order").  *See* Dkt. 36.  Pursuant to the First Interim Order, "[t]o the extent any of the Bank Accounts are not in compliance with section 345(b) of the Bankruptcy Code or any of the U.S. Trustee's requirements or guidelines, the Debtor shall have until a date that is thirty (30) days from the date of this Interim Order, without prejudice to seeking additional extensions, to either come into compliance with section 345(b) of the Bankruptcy Code and any of the U.S.

Trustee's requirements or guidelines or to make such other arrangements as are agreed to by the U.S. Trustee or approved by the Court." *See id.* at page 4 of 8.

17.     On October 2, 2024, the Court entered a Second Interim Order (i) Authorizing the Debtor to Continue and Maintain Its Existing Cash Management System, Bank Accounts and Business Forms, (ii) Modifying the Investment Guidelines and (iii) Granting Related Relief (the "Second Interim Order"). *See* Dkt. 99.  The Second Interim Order reflects the same language as was contained in the First Interim Order. *See id.* at page 4 of 8.

18.     On November 14, 2024, the Court entered a Third Interim Order (i) Authorizing the Debtor to Continue and Maintain Its Existing Cash Management System, Bank Accounts and Business Forms, (ii) Modifying the Investment Guidelines and (iii) Granting Related Relief (the "Third Interim Order"). *See* Dkt. 200.  The Third Interim Order contained the same language as the First and Second Interim Orders. *See id.* at page 4 of 8.

19.     On December 10, 2024, the Court entered a Fourth Interim Order (i) Authorizing the Debtor to Continue and Maintain Its Existing Cash Management System, Bank Accounts and Business Forms, (ii) Modifying the Investment Guidelines and (iii) Granting Related Relief (the "Fourth Interim Order"). *See* Dkt. 200.  Again, the language of the Fourth Interim Order mirrors most of the terms of the prior three Interim Orders except the Debtor's obligation to comply with section 345(b) was extended "until a date that is seven (7) days after the Final Hearing or any adjourned date thereof." *See id.* at page 4 of 8.

20.     Pursuant to the Interim Orders, the Debtor filed the Declaration, which provides further support for the requested waiver of section 345. *See* Dkt. 252.

21.     The Motion outlines the Debtor's Cash Management System that utilizes the three Foreign Currency Accounts. *See* Dkt. 8 at page 8 of 22.

22.     Each is maintained at Bank of America.  *See id.* at page 6 of 22 and Dkt. 252 at page 2 of 4.

23.     The Declaration states that the Foreign Currency Accounts are not FDIC insured, and the Debtor has confirmed that Bank of America does not provide any other insurance.  *See* Dkt. 252 at page 2 of 4.

24.     Nonetheless and in connection with the request to continue to maintain the Foreign Currency Accounts in their pre-petition forms, the Debtor seeks a waiver of the requirements of section 345(b).  *See* Dkt. 8 at pages 18-20 of 22 and Dkt. 252.

## ARGUMENT

*Statutory Framework:*

25.     Section 345(b) [5] of the Bankruptcy Code imposes certain requirements as to where estate funds can be held in order to protect the funds for the benefit of all creditors.  Unless a

---

[5] Bankruptcy Code § 345(b) provides that:

(b) Except with respect to a deposit or investment that is insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States, the trustee shall require from an entity with which such money is deposited or invested—

(1)  a bond—

(A) in favor of the United States;

(B) secured by the undertaking of a corporate surety approved by the United States trustee for the district in which the case is pending; and

(C) conditioned on—

(i) a proper accounting for all money so deposited or invested and for any return on such money;

(ii) prompt repayment of such money and return; and

(iii) faithful performance of duties as a depository; or

(2) the deposit of securities of the kind specified in section 9303 of title 31; unless the court for cause orders otherwise.

deposit or investment is insured or guaranteed by the United States (or a federal department,

agency, or instrumentality) or backed by the full faith and credit of the United States, the trustee

or debtor in possession must require from an entity with whom estates funds are deposited to post

a bond in favor of the United States or, in the alternative, deposit securities of the type specified

in section 9303 of title 31 of the United States Code as security for the investment or deposit. *See*

11 U.S.C. § 345(b).

26.    Section 345(a) of the Bankruptcy Code requires the trustee or a debtor in possession

to deposit or invest money of the estate so that it will result in the "maximum reasonable net return.

. . [while] taking into account the safety of such deposit or investment." Section 345(b) requires

that estate funds be deposited or invested so as to ensure that the funds are protected for the benefit

of creditors. *See* 11 U.S.C. § 345(b). A court may waive the requirements of section 345(b) upon

the showing of "cause." *Id.*

27.    Generally, unless the funds are insured or guaranteed by the United States or one

of its agencies or backed by the full faith and credit of the United States, the institution holding

the estate funds must post a bond in favor of the United States or, in the alternative, deposit

securities pursuant to 31 U.S.C. § 9303 as security.  To ensure that trustees and debtors in

possession meet their responsibilities to safeguard funds in accordance with section 345, the

United States Trustee monitors fiduciaries and depositories, and requires that chapter 11 estate

assets be held in debtor-in-possession accounts at "authorized depositories," *i.e.*, those that have

entered into a Uniform Depository Agreement ("UDA") with the U.S Trustee. *See* Manual, §§ 7-

1.1 – 7-1.2.

28.    The UDA between a depository and the U.S. Trustee requires the depository to

maintain collateral, unless an order of the bankruptcy court provides otherwise, in an amount of

no less than 115 percent of the aggregate bankruptcy funds on deposit in each bankruptcy estate that exceeds the FDIC insurance limit. *See* Manual, § 7- 1.2.1. Pursuant to the UDA, each authorized depository is required to provide quarterly reports for all bankruptcy estate accounts on deposit at all branches of the depository within the district. *See* Manual, § 7- 1.3.2.

29.    Pursuant to the U.S. Trustee's responsibilities under 11 U.S.C. § 345 and 28 U.S.C. § 586, the U.S. Trustee has entered into UDAs with multiple financial institutions. The UDA requires the signatory bank to collateralize or obtain a surety bond for all estate monies exceeding FDIC insurance limits, pursuant to section 345(b) of the Bankruptcy Code. The UDA also requires banks to provide the U.S. Trustee with reports of all accounts that a debtor maintains at the bank on a quarterly basis.

30.    The UDA also aims to safeguard estates monies on deposit at UDA banks if those banks encounter difficulties during a case. Specifically, the UDA makes all estate monies on deposit immediately due and payable if the depository bank fails, suspends active operations or becomes insolvent, or if a receiver, conservator or liquidator is appointed for the bank.

***Review of the Foreign Currency Accounts:***

31.    Pursuant to the Declaration, the Debtor utilizes the Foreign Currency Accounts for payments to foreign vendors for goods and other supplies. *See* Dkt. 252 at page 3 of 4. The Debtor represents that approximately 65% of the Debtor's total annual disbursements occur through the Foreign Currency Accounts. *See id.* The Debtor further represents that it also receives payments and other deposits from foreign customers for payment of account of foreign goods sold in the Foreign Currency Accounts, which represents approximately 15% of the Debtor's total annual receipts. *See id.*

32.    The Debtor argues that changing the Foreign Currency Accounts would "significantly disrupt its business and ability to continue its foreign transactions, which are essential to the Debtor's operations."  *See id.*  In an effort to reduce its potential liability as the Foreign Currency Accounts are not insured, the Debtor sets forth that "it will not permit the aggregate balance of funds in the Foreign Currency Accounts exceed $750,000 at any one time." *See id.*

33.    At the time the Motion was filed, the Debtor had $1,279,376.24 in the Foreign Currency Accounts including $164,751.92 in the GBP Account, $736,085.66 in the Euro Account and $378,538.66 in the Yen Account.  *See id.*

***The Debtor Has Not Established Cause for Relief from 11 U.S.C. § 345(b):***

34.    Section 345(b) provides that the Court may exercise its discretion to waive the requirements under 345(b), but only for cause.  Here, the Motion before the Court fails to establish such cause.

35.    Regarding the Foreign Currency Accounts, other than capping the amount held at $750,000, the Motion does not discuss how the funds held therein are safeguarded in accordance with the intents and purposes of section 345(b), or are otherwise protected from a risk of loss to the bankruptcy estate.  As outlined above, as of the date the Motion was filed, the Foreign Currency Accounts held $1,279,376.24.  More concerning is that the Motion informs that there is no insurance protection for any of the funds held in the Foreign Currency Accounts.  At all times, the estate will be at risk of losing up to $750,000 held in the Foreign Currency Accounts.

36.    The purpose of section 345(b) is to protect funds of a bankruptcy estate from loss; that is a simple, yet profound purpose, contained in the Bankruptcy Code for the benefit of all creditors.  With regard to the Foreign Currency Accounts, the Declaration is clear that the funds

held in such accounts are not bonded, insured, or otherwise protected; thus, all such accounts stand exposed to a risk of loss. The bankruptcy estate, and its creditors, should not shoulder that risk.

37.    An additional concern stems from a lack of reporting of the Foreign Currency Accounts. Although Bank of America is party to a UDA, Bank of America is not required to collateralize foreign bank accounts including the Foreign Currency Accounts. In addition, Bank of America is not obligated to provide reporting concerning the Foreign Currency Accounts to the U.S. Trustee. As such, the Foreign Currency Accounts would not be subject to monitoring. If permitted to continue in their current forms, the sums held in the Foreign Currency Accounts would continue without the necessary monitoring, oversight and ability to safeguard the funds.

38.    For these reasons, the U.S. Trustee respectfully asserts that, as presented, the Motion does not establish cause to waive the requirements of section 345(b) for the Foreign Currency Accounts.

***Remaining Debtor Bank Accounts Should Not Be Subject to a 345(b) Waiver:***

39.    In the event the Court considers granting a waiver under section 345(b) of the Bankruptcy Code regarding the Foreign Currency Accounts, the Court should not extend that waiver to the balance of the Debtor Bank Accounts, as such relief would be unnecessary.

40.    The remaining Debtor bank accounts should not be the subject of a section 345(b) waiver, as such relief is not necessary.

***Reservation of Rights:***

41.    The U.S. Trustee reserves any and all rights, remedies, duties, and obligations found at law, equity or otherwise, including the right to complement, supplement, augment, alter and/or modify this Limited Objection.

WHEREFORE, the U.S. Trustee respectfully submits that the Court deny the Motion and grant such other relief as the Court deems just and necessary.

Respectfully submitted,

ANDREW R. VARA
UNITED STATES TRUSTEE
REGIONS 3 & 9

*/s/ Jeffrey M. Sponder*
Jeffrey M. Sponder
Trial Attorney

Dated:  January 21, 2025